UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TATTOO ART, INC.,

                Plaintiff,

vs.

TAT INTERNATIONAL,
LLC,

                Defendant.

_____/

Case No. 1:12-mc-33

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This matter is now before the court on three motions filed by Bonnie J. Knapp and Bon J. Stoneware, LLC (sometimes referred to as the "Interested Parties"): "motion to set aside court orders and to dismiss Bonnie J. Knapp and Bon J. Stoneware" (docket no. 133); "motion for order setting matter for hearing before a jury" (docket no. 138); and "request for expedited consideration" (docket no. 140). In addition, the court will consider plaintiff's "motion to strike Bonnie J. Knapp and Bon J. Stoneware, LLC's jury demand" (docket no. 136).

        **I.**        **Background**

        **A.**        **Plaintiff's judgment**

On August 23, 2011, plaintiff obtained a judgment in the United States District Court for the Eastern District of Virginia against TAT International, LLC ("TAT") and Kirk Knapp (sometimes referred to as "Knapp"), its principal and sole member. *See* Judgment (docket no. 1), Order (docket no. 2) and Exemplification Certificate (docket no. 4). The judgment totals $683,345.57 and consists of the following: $18,105.48 in damages and prejudgment interest against TAT; $546,460.59 in damages and prejudgment interest against TAT and Knapp, jointly and severally;

$24,827.00 of attorney's fees for which TAT is solely liable; and $93.952.50 of attorney's fees for which TAT and Knapp are jointly and severally liable. *Id.* On March 2, 2012, the judgment was registered in this district pursuant to 28 U.S.C. § 1963. *Id.* Since that date, plaintiff has conducted post-judgment proceedings in this court.

> **B.     Plaintiff's collection efforts involving Pehrson Capital Corporation (PCC) and TatStore, LLC**

In order to place the present motions in context, the court will summarize plaintiff's efforts to collect the judgment from other parties alleged to have received some of the judgment debtor's assets. On May 11, 2012, plaintiff filed a motion for a court order allowing it to seize the website domain "Tatstore.com" and sell the domain as a judgment creditor. *See* Motion to seize Tatstore.com (docket no. 55). On May 17, 2012, PCC and its wholly owned subsidiary, TatStore, LLC, moved to intervene in this proceeding, asserting that PCC purchased TAT's assets at a sheriff's foreclosure sale. *See* Motion to intervene (docket no. 62); Brief (docket no. 63); and John Pehrson Aff. (docket no. 63 at pp. 5-6). In his affidavit, Pehrson explained that: TAT became indebted to PCC "as a result of consulting services provided by PCC to TAT" pursuant to a written contract entered in 2005; that PCC received a security interest in all of TAT's assets to secure repayment of the debt; that PCC "perfected its security interest" in TAT's assets "by filing a UCC-1 statement with the State of Michigan in 2009"; that TAT defaulted on its obligation to repay PCC; and that PCC foreclosed on its security interest and purchased all of TAT's assets at the sheriff's foreclosure sale on October 15, 2011. John Pehrson Aff. at ¶¶ 2-6. Based on this purchase, PCC takes the position that "all of the assets of TAT International, LLC were legally and properly owned by PCC as of October 15, 2011." *Id.* at ¶ 6. After purchasing the assets, PCC conveyed those assets to its wholly owned subsidiary, TatStore, LLC. *Id.* at ¶ 7.

2

The court granted PCC and TatStore, LLC's motion to intervene on June 4, 2012. *See* Order (docket no. 69).  On June 13, 2012, the court denied plaintiff's motion to seize tatstore.com without prejudice. *See* Order (docket no. 95).  In denying this motion, the court noted plaintiff's contentions that "PCC obtained Tatstore.com through a fraudulent transfer" and "that a separate motion pursuant to M.C.L. § 600.6128 is the appropriate method to determine the ownership interests in Tatstore.com." *Id.*  The court further noted that "numerous factors could alter [p]laintiff's motion to seize after the ownership interests in Tatstore.com are determined." *Id.*

### C.    Bonnie J. Knapp and Bon J Stoneware

On June 11, 2012, plaintiff filed its first motion to add Bonnie J. Knapp and Bon J. Stoneware as parties and determine interests in property. *See* Motion (docket no. 84).  The court denied this motion without prejudice for technical deficiencies. *See* Order (docket no. 113).   On July 2, 2012, plaintiff filed its present motion to add Bonnie J. Knapp and Bon J. Stoneware as parties and determine interests in property. *See* Motion (docket no. 114).  This motion was docketed as a motion for order to show cause, *id.*, and arises from judgment debtor Kirk Knapp's testimony that his wife, Bonnie J. Knapp, and her business, Bon J. Stoneware, LLC, hold his funds and pay his bills. *See* Plaintiff's Brief (docket no. 115); Kirk Knapp testimony (docket no. 115-2).  This motion appears to contest garnishee disclosures dated June 28, 2012, in which Bonnie J. Knapp stated that she "is not indebted to defendants for any amount and does not possess or control defendant's property." *See* Garnishee Disclosures as to defendant Kirk Knapp (docket no. 117) and TAT International, LLC (docket no. 118).

After reviewing the record, the court issued an order to show cause as requested in plaintiff's motion. *See* Order to show cause (docket no. 119).  On July 26, 2012, after the

presentation of evidence and oral argument at the show cause hearing, the court granted plaintiff's motion to add Bonnie J. Knapp and Bon J. Stoneware as parties, and scheduled a hearing to determine their interests in property to be held on August 30, 2012.  *See* Order (docket no. 121).

Bonnie J. Knapp and Bon J. Stoneware, LLC subsequently retained counsel, who filed the present motion for reconsideration and a jury demand nine days before the evidentiary hearing scheduled for August 30, 2012.  *See* Jury Demand  (docket no. 134).  Plaintiff responded with a motion to strike the jury demand (docket no. 136), which precipitated Bonnie J. Knapp and Bon J. Stoneware filing their "motion for order setting matter for hearing before a jury" (docket no. 138) and a request for expedited consideration (docket no. 140).  On September 12, 2012, the court heard the four outstanding motions (docket nos. 133, 134, 136 and 138), and took the matters under advisement.

## II.      Request for expedited consideration (docket no. 140)

Bonnie J. Knapp and Bon J. Stoneware requested expedited consideration of their motions for reconsideration and other relief.  Their request (docket no. 140) should be granted.

## III.      Motion to set aside order (docket no. 133)

Interested parties Bonnie J. Knapp and Bon J. Stoneware have moved to set aside and/or reconsider the three previously entered orders: the court's order that Bonnie J. Knapp and Bon J. Stoneware not transfer any property, money or things in action that could be used to satisfy plaintiff's judgment (docket no. 96); the court's order to show cause why Bonnie J. Knapp and Bon J. Stoneware should not be added as parties (docket no. 119); and the court's order granting plaintiff's motion to add Bonnie J. Knapp and Bon J. Stoneware as parties and to determine interests

in property (docket no. 121).   In reviewing requests for reconsideration, the court is guided by the

local court rule which  provides:

> Generally, and without restricting the discretion of the Court, motions for reconsideration which merely present the same issues ruled upon by the Court shall not be granted.  The movant shall not only demonstrate a palpable defect by which the Court and the parties have been mislead, but also show that a different disposition of the case must result from the correction thereof.

W.D. Mich. LCivR 7.4(a).  A defect is palpable if it is easily perceptible, plain, obvious, readily

visible, noticeable, patent, distinct or manifest. *See Compuware Corp. v. Serena Software*

*International, Inc.*, 77 F. Supp.2d 816, 819 (E.D. Mich. 1999).

Bonnie J. Knapp and Bon J. Stoneware seek reconsideration of orders entered with

respect to plaintiff's efforts to collect its judgment against defendants pursuant to Fed. R. Civ. P. 69,

which provides in pertinent part as follows:

> **(a) In General.**
>
> > **(1) Money Judgment; Applicable Procedure.**  A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.
> >
> > **(2) Obtaining Discovery.**  In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a).  Consistent with Fed. R. Civ. P. 69(a), plaintiff is utilizing Michigan's

Proceeding for Supplementary Judgment Act (PSJA), which appears at M.C.L. § 600.6101 *et seq*.

*See generally, Green v. Ziegelman*, 282 Mich. App. 292, 297, 767 N.W.2d 660 (2009) (discussing

the application of the PSJA).

5

The gist of Bonnie J. Knapp and Bon J. Stoneware's motion is that plaintiff should be proceeding under the Michigan Uniform Fraudulent Transfer Act (MUFTA), M.C.L. § 566.31 *et seq.* rather than the PSJA. *See* Bonnie J. Knapp and Bon J. Stoneware Brief at p. 6 (docket no. 133) (plaintiff is "attempting to squeeze a Uniform Fraudulent Transfer of Assets claim into a very narrow provision of the Revised Judiciary Act, namely [ M.C.L. §] 600.6128"). They also complain that this court cannot determine "fraudulent intent" under § 600.6128 ("[t]hese are not determinations that can be [sic] without any pre-trial discovery or motion practice in a 45 minute 'trial by ambush'"). *Id.* at p. 12. In support of this claim, the Interested Parties state that § 600.6128 has "no application to allegations that a judgment debtor transferred money or fraudulently paid money to a third party" and that the statute "does not permit a court to make the type of determinations" for such a claim. *Id.* at pp. 6-7. The court disagrees.

Michigan provides an extensive statutory scheme for enforcement of judgments. The statutory remedies provided by the PSJA include "all of the relief a judgment debtor would ordinarily require." 3 Mich. Ct. Rules Prac., Text § 2621.3 (5th Ed.). These statutory remedies include: "[c]ompulsory examination of the debtor and other persons to discover assets belonging to the debtor" (M.C.L. §§ 600.6104(1) and 600.6110); "[i]njunctive relief against the debtor and third parties brought into the proceeding, with authority to enter judgment against a third party who transfers a debtor's property in violation of the restraining order" ( M.C.L. §§ 600.6104(2), 600.6116 and 600.6119); "[a]ppointment of a receiver for the debtor's property, including any property acquired thereafter" (M.C.L. § 600.6104(4)); "[d]etermination of ownership of assets, where the debtor's title or interest is disputed" (M.C.L. §§ 600.6128 and 600.6131); "[a] court order for satisfaction of the judgment out of any of debtor's non-exempt assets, including unliquidated

6

claims" (M.C.L. §§ 600.6104(3) and 600.6140); "[p]ayment of the judgment in installments, out of future income of the debtor" (M.C.L. § 600.6107); and "[a]ny other relief that appears appropriate to the court for the satisfaction of the judgment" (M.C.L. § 600.6104(5)).  *Id.  See also, Woodridge Hills Association v. Williams*, No. 300193, 2011 WL 6378813 at *3 (Mich. App. Dec. 20, 2011) ( "[t]he PSJA addresses such matters as transfers of the judgment debtor's property, MCL 600.6116, transfers of the judgment debtor's property held by third parties, MCL 600.6119 and MCL 600.6122, and fraudulent transfers, MCL 600.6134").

Plaintiff's motion to determine interests in property seeks a hearing under M.C.L. § 600.6128, which provides as follows:

(1) Where it appears to the court that:

(a) The judgment debtor may have an interest in or title to any real property, and such interest or title is disclaimed by the judgment debtor or disputed by another person;

(b) The judgment debtor may own or have a right of possession to any personal property, and such ownership or right of possession is substantially disputed by another person; or

(c) A third party is indebted to the judgment debtor, and the obligation of the third party to pay the judgment debtor is disputed; the court may, if the person or persons claiming adversely is a party to the proceeding, adjudicate the respective interests of the parties in such debt or real or personal property, and may determine such property to be wholly or in part the property of the judgment debtor, or that the debt is owed the judgment debtor.

(2) If the person claiming adversely to the judgment debtor is not a party to the proceeding, the court shall by show cause order or otherwise cause such person to be brought in and made a party thereto, and shall set such proceeding for early hearing.

(3) Any person so made a party, or any party to the original proceeding, may have such issue determined by a jury upon demand therefor and payment of a jury fee as

7

in other civil actions if such person would be entitled to a jury trial if the matter was adjudicated in a separate action.

M.C.L. § 600.6128.

The procedure for trying title to debt or property is set forth in M.C.L. § 600.6131, which provides in pertinent part:

> **(1) Burden of proof.** The complainant shall make a prima facie case by introducing in evidence the judgment against the principal defendant and proof of the conveyance complained of. The burden of proof is then on the judgment debtor, the person claiming through him, or the person whom it is claimed holds the property in trust for him, to show that the transaction is in all respects bona fide or that the person is not holding as trustee of the judgment debtor.

M.C.L. § 600.6131(1).

Here, plaintiff's seek a determination pursuant to M.C.L. § 600.6128(1)(c) that third parties Bonnie J. Knapp and Bon J. Stoneware are indebted to defendant Kirk Knapp, because they are holding funds that belong to him. This determination is relevant to the supplemental proceedings, because Bonnie J. Knapp executed a garnishee disclosure stating that she was not indebted to Kirk Knapp. If plaintiff can demonstrate that Bonnie J. Knapp was in fact indebted to Kirk Knapp, then her garnishee disclosure was false.

Bonnie J. Knapp and Bon J. Stoneware also object to the use of the PSJA as a "summarial adjudication of a claim alleging fraudulent conveyance" which, according to them, has been "displaced" by the MUFTA. *See* Brief at pp. 12-13 (docket no. 133). They cite M.C.L. § 566.39 ("Time for institution of action with respect to fraudulent transfer or obligation"),[1] which provides that:

---

[1] The court notes that Bonnie J. Knapp and Bon J. Stoneware erroneously cite this statute as M.C.L. § 556.39. *See* Brief at p. 12 (docket no. 133).

8

A cause of action with respect to a fraudulent transfer or obligation under this act is extinguished unless action is brought under 1 or more of the following:

(a) Sections 4(1)(a) and (b) and 5(1) [M.C.L. §§ 566.34 and 566.35], within the time period specified in sections 5813 and 5855 of the revised judicature act of 1961, 1961 PA 236, MCL 600.5813 and 600.5855.

(b) Section 5(2) [M.C.L. § 566.35], within 1 year after the transfer was made or the obligation was incurred.

M.C.L. § 566.39 (footnote omitted).  Contrary to the interested parties' contention, the plain language of M.C.L. § 566.39 neither refers to the PSJA nor extinguishes any claims under that statute.  Rather, M.C.L. § 566.39 is a statute of limitations provision within MUFTA applicable to claims brought under MUFTA.  *See Americorp Financial Group, Inc. v. Powerhouse Licensing, LLC*, No. 271189, 2007 WL 189374 at *2-*5 (Jan. 25, 2007) (noting that M.C.L. § 566.39 defines the applicable statute of limitations for bringing MUFTA claims under M.C.L. §§ 566.34 and 566.35).

Furthermore, Bonnie J. Knapp and Bon J. Stoneware's contention that plaintiff is "squeezing" a fraudulent transfer claim into the supplementary proceedings, and that "there is no allegation concerning some in [sic] indebtedness in dispute" is without merit. *See* Bonnie J. Knapp and Bon J. Stoneware's Brief at pp. 11-13 (docket no. 133).  The PSJA specifically refers to fraudulent transfers, stating "[f]or the purposes of this chapter a person is deemed to be indebted to the judgment debtor, although any debt in question has been assigned, charged or encumbered by the judgment debtor, if the assignment, charge or encumbrance is fraudulent as against creditors or is otherwise voidable." M.C.L. § 600.6134 ("Fraudulent transfers").  Moreover, as one commentator points out, a judgment creditor, like plaintiff, has a choice of remedies with respect to fraudulent transfers and may proceed under either the PSJA or MUFTA:

9

A judgment creditor seeking to reach assets that it contends have been conveyed in a fraudulent manner may also proceed under the Uniform Fraudulent Transfer Act.  The choice of remedies is available for attacking conveyances of realty or of personalty, as MCLA 600.6131 is applicable to both.  However, a proceeding under the Uniform Fraudulent Transfer Act requires the plaintiff to retain the burden of proving the conveyance fraudulent, either by showing actual intent to defraud or the statutory conditions amounting to fraud in law.  Where the judgment creditor has a choice of remedies, supplementary proceedings are normally preferable.

3 Mich. Ct. Rules Prac., Text § 2621.6 (5th Ed.) (footnotes omitted).

In summary, the PSJA provides a mechanism by which plaintiff can demonstrate that Bonnie J. Knapp and Bon J. Stoneware are indebted to the judgment debtors.  Such indebtedness may include fraudulent transfers as contemplated under M.C.L. § 600.6134.  If plaintiff can satisfy the provisions of the PSJA, then it can then secure that indebtedness through garnishments issued to these interested parties.  Bonnie J. Knapp and Bon J. Stoneware have not demonstrated a palpable defect in the court's orders (docket nos. 96, 119 and 121) by which the Court and the parties have been mislead, nor shown that a different disposition of the case must result from the correction thereof.  *See* W.D. Mich. LCivR 7.4(a).   Accordingly, the motion to set aside these orders (docket no. 133) should be denied.

### III.   "Motion to strike Bonnie J. Knapp and Bon J. Stoneware, LLC's jury demand" (docket no. 136) and "Motion for order setting matter for hearing before a jury" (docket no. 138).

On August 21, 2012, Bonnie J. Knapp and Bon J. Stoneware filed a jury demand pursuant to M.C.L. § 600.6128.  *See* Jury Demand (docket no. 134).  Plaintiff moved to strike the jury demand.  Bonnie J. Knapp and Bon J. Stoneware subsequently moved to set this matter for hearing before a jury.   The PSJA provides that "[p]roceedings under this chapter are special

10

proceedings, and shall be heard by the judge without a jury, except as provided in subsection (3) of section 6128 [M.C.L. § 600.6128]."  M.C.L. § 600.6113(1).

When state law allows the interested parties to request a jury in post-judgment proceedings brought pursuant to Fed. R. Civ. P. 69, the court looks to the federal rule regarding jury demands, Fed. R. Civ. P. 38, which provides in pertinent part:

> **(b) Demand.**  On any issue triable of right by a jury, a party may demand a jury trial by:
>
> > (1) serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after the last pleading directed to the issue is served; and
> >
> > (2) filing the demand in accordance with Rule 5(d).

Fed. R. Civ. P. 38(b).  *See United States Leather, Inc. v. Mitchell Manufacturing Group, Inc.*, 276 F.3d 782, 789-90 (6th Cir. 2002) (applying Fed. R. Civ. P. 38 to post-judgment proceedings brought under M.C.L. § 600.6128(3)).

In *United States Leather*, the court rejected the defendant's jury demand where the supplementary proceedings were initiated in August 1999 (when the defendant moved to set aside a garnishment and the plaintiff filed a motion for determination of interests) but the defendant did not file a jury demand until March 27, 2000, when it objected to a magistrate judge's report and recommendation which acknowledged defendant's standing as an intervenor in the proceedings. *Id.* at 786, 790.  Given this timeline, the Sixth Circuit concluded that the defendant "clearly placed the issue" of determination of interests before the court for decision in August 1999, and that it "may not wait six  months for filing a demand for a jury trial."  *Id.* at 790.

Here, plaintiff filed its original motion to add Bonnie J. Knapp and Bon J. Stoneware and to determine the interests in property on June 11, 2012.  *See* Motion (docket no. 84).  Plaintiff

re-filed the motion on July 2, 2012.  While the PSJA does not explicitly require the filing of responsive pleadings as contemplated by Fed. R. Civ. P. 38,  Bonnie J Knapp appeared at the July 26, 2012 show cause hearing to contest plaintiff's motion, representing both herself and Bon J Stoneware.

At that hearing, the undersigned heard the testimony of defendant Kirk Knapp and found that there was an issue regarding improper transfers to Bonnie J Knapp and Bon J. Stoneware:

> Thank you both.  I've already stated several times the issue before the Court and that is whether or not Bonnie J. Knapp and Bon J. Stoneware, LLC should be added as parties and this matter further litigated as to the determination of whether there were any improper transfers and so forth.

> I'm going to grant the motion.  I think that it is evident that there were transfers.  There's evidence of insolvency.  There's evidence that the funds were being held for the benefit of the debtor.  They may or may not be exempt or parts of them may or may not be exempt.  That's an issue for another day.  But I think there's enough showing here that has not been refuted to carry the day as far as adding a party.

> For that matter this is more technical but Bon J. Stoneware is a company.  It cannot appear except by an attorney.  No attorney has appeared for it.  Nothing has been filed on its behalf so there's no objection before the Court technically speaking by Bon J. Stoneware to being added.

> Mrs. Knapp has allowed her husband to speak for her or the Court has allowed him to speak for her.  I'm assuming that she would say the same things that he said so I will allow that for today's purposes, and I find that there is sufficient showing made by the plaintiff that Bonnie J. Knapp and Bon J. Stoneware can be added.

> We'll schedule a hearing.  Probably we're going to hear some of the same things we've already heard but the Court will have to make a determination as to the merits of those arguments.  That'll be set either next month or some time in September depending on the Court's calendar.

Show Cause Trans. at pp. 35-36 (docket no. 196).  Later that day, the court issued an order scheduling the hearing to determine the respective financial interests of the parties in the property and assets for August 30, 2012.  *See* Order (docket no. 121).

By appearing at the hearing in response to the show cause order and contesting plaintiff's motion to add them as parties and determine interests pursuant to M.C.L. § 600.6128, Bonnie J. Knapp and Bon J Stoneware had clearly placed the issue of determination of interests before the court.  *See United States Leather*, 276 F.3d at 789-90.  Under these circumstances, the interested parties' time for filing a jury demand commenced either when the court advised them at the July 26, 2012 hearing or, at the latest, when the court issued the order.  Bonnie J. Knapp and Bon J. Stoneware filed their jury demand 26 days later (August 21, 2012).   Even if the court allowed them an additional three days for service of the order by mail[2], plaintiff's jury demand should have been filed by no later than Monday, August 13, 2012. Under the facts of this case, the jury demand, filed on August 21, 2012, was untimely.  Accordingly, plaintiff's  motion to strike Bonnie J. Knapp and Bon J. Stoneware's jury demand (docket no. 136) should be granted and Bonnie J. Knapp and Bon J. Stoneware's motion for order setting matter for hearing before a jury (docket no. 138) should denied.

##        IV.        Recommendation

For the reasons set forth above, I respectfully recommend that Bonnie J. Knapp and Bon J. Stoneware's  "request for expedited consideration" (docket no. 140) be **GRANTED**, that their "motion to set aside court orders and to dismiss Bonnie J. Knapp and Bon J. Stoneware"

---

[2] *See* Fed. R. Civ. P. 6(d).

13

(docket no. 133) be **DENIED**, and that their "motion for order setting matter for hearing before a jury" (docket no. 138) be **DENIED**.

       I further recommend that plaintiff's "motion to strike Bonnie J. Knapp and Bon J. Stoneware, LLC's jury demand" (docket no. 136) be **GRANTED** and that the jury demand (docket no. 134) be **STRICKEN**.


Dated:  December 12, 2012         /s/ Hugh W. Brenneman, Jr.
                                HUGH W. BRENNEMAN, JR.
                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

14